(42 South. 267.)

No. 16,167.

LEVY v. LEVY et al.

(Oct. 29, 1906. On Rehearing, Nov. 26, 1906.)

APPEAL — REHEARING—ORIGINAL JUDGMENT.

The judgment from which only a restricted rehearing is granted continues to stand, and to be decisive of the issues not embraced in the order of rehearing.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; John St. Paul, Judge.

Action by Herman Levy against Ella Levy and others. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

William Sommer Benedict, for appellants. Benjamin Rice Forman, for appellee.

PROVOSTY, J. The property in dispute, consisting of a house and lot, belonged to the community of acquets and gains which existed between the grandparents of the litigants. At the death of the grandfather, in 1876, the grandmother became the absolute owner of one undivided half of it and usufructuary of the other half, and her two sons, A. and L. Levy, the fathers of the litigants, inherited the naked ownership of this other half.

On the 12th of June, 1890, the property was adjudicated at tax sale to one Fabacher. On the 20th of July of the following year, 1891, plaintiff bought it from Fabacher, and, in consideration of a cash payment of $500, obtained from the grandmother a ratification of the tax title. The grandmother died on the 23d of February, 1894. Defendants at once set up a claim to an interest in the property as heirs of their father and grandmother, and the plaintiff brought the present suit in slander of title.

In pursuance of an agreement of the litigants to that effect, the property was sold pending the suit, and the price was deposited in bank to the credit of certain attorneys, to be retained by said attorneys subject to the result of the suit; "the said proceeds to represent the property and to stand in lieu thereof, the same as if the property had never been sold."

The price of the sale was $5,000, of which $2,500 was cash and $2,500 represented by three notes of the purchaser, for $833.33 each, dated January 1, 1904, and payable in one, two, and three years, with 8 per cent. per annum interest from date.

The present appeal is the second in the case. 107 La. 576, 32 South. 117. On the first the issues were (1) as to the validity of the tax sale; (2) as to the effect of its ratification by the grandmother; and (3) whether the tax sale to Fabacher and the sale by Fabacher to plaintiff had not been mere shams, and the said parties merely persons interposed to hold the property for the grandmother. The court decided all these issues

against defendant, but subsequently granted a rehearing in the following terms:

"A rehearing is granted in this case, restricted to the question of the validity or invalidity of the tax sale, in so far as concerns the interest of the two defendants in the undivided half once owned by their grandfather, Henry Lévy, in the property in question, and title to which they claim by inheritance; the inquiry being restricted to the irregularities alleged in the tax proceedings leading to the sale."

On the rehearing, the court annulled the tax sale, in so far as the interest of defendant in the property was concerned, and remanded the case, in order that the parties should settle between themselves "the respective rights and obligations arising out of and relating to said property."

After the case was thus remanded, the plaintiff settled with one of the defendants; and Mrs. Rich is now sole defendant.

A part of the deposited proceeds of the sale of the property, namely, $441.90, was lost through the defalcation of the depositories. Defendant would hold plaintiff for this loss, because the depositories were his attorneys, and because he took the deposit out of their hands, all but the said $441.90, which the depositories were unable to restore. The first of these reasons ignores the fact that the selection of the depositories was the free act of defendant, and that consequently they were just as much her agents as plaintiff's. The second reason contains a non sequitur. Because plaintiff was unable to collect the $441.90 from the depositories is no reason why he should be responsible for defendant's share of it. The fact is that the withdrawing of the deposit seems to have been timely for averting a greater loss, and the act seems to call for thanks from defendant, and not blame.

Plaintiff should have redeposited the money, however; and, not having done so, but having used it, he must pay legal interest on it. This interest must run from the date plaintiff received the funds. That date, unfortunately, is not fixed in the record, and we are left to fix it as best we can. For want of a better, we will adopt the date of the maturity of the last note. It was not sooner than that, because that note was collected by the depositories. It may have been much later, but since plaintiff has voluntarily, and without consulting defendant, substituted himself to the depositories, we will adopt the latest date at which we know for a certainty that the entire amount was in the hands of the depositories.

The costs of the sale must be deducted from the purchase price. We find them to have been $52.60, as per bill, and we add to them the $110 paid by plaintiff to the receiver of Sulzbacher & Plummer for the judgment against A. and L. Levy. This judgment was null for want of citation, as has since been decided by this court (Levy v. Rich, 106 La. 243, 30 South. 377), and hence did not bear mortgage on the property; but that fact had not been ascertained at that time, and without the cancellation of the mortgage which it was supposed to bear on the property the sale could not have taken place.

Adding to the capital of $5,000 the interest which had accumulated on the three notes representing the credit portion of the price when they were collected, and deducting therefrom the costs, and also the $441.90, we have $4,795.34 as standing for the property in dispute.

Plaintiff contends that, before turning over to defendant her one-eighth of this fund, he has the right to require her to settle with him her liabilities to him growing out of her unconditional acceptance of the succession of her grandmother. But manifestly he cannot. By express agreement the fund stands in place of the property, "the same as if the property had never been sold." Manifestly, the possessor of property, who is condemned

to give it up to the rightful owner, cannot require that, as a condition precedent to the surrender, this rightful owner shall square up all accounts with him. The most he can require is that this owner shall reimburse the necessary expenses incurred on the property. This court did not mean that any more than this should be done when, after condemning plaintiff to restore to defendant her share of the property, it remanded the case for a settlement to be made between the parties.

As a matter of course, defendant does not owe plaintiff the gross expenses, but only their excess over the revenues. We state the account of the revenues and expenses, as follows:

### Receipts.

Rents from Mrs. Drury:

| | |
|---|---|
| 1890–July 10 | $2 00 |
| August 4 | 2 00 |
| August 30 | 2 00 |
| October 13 | 2 00 |
| November 17 | 2 00 |
| December 15 | 2 00 |
| 1891–February 2 | 2 00 |
| March 16 | 2 00 |
| April 13 | 2 00 |
| May 11 | 2 00 |
| June 1 | 2 00 |
| July 10 | 2 00 |
| September 21 | 2 00 |
| October 5 | 2 00 |
| November 16 | 2 00 |
| December 21 | 2 00 |
| 1892–February 18 | 4 00 |
| March 21 | 2 00 |
| April 18 | 2 00 |
| May 16 | 2 00 |
| June 20 | 2 00 |
| July 2 | 2 00 |
| August 1 | 2 00 |
| October 16 | 2 00 |
| 1893–January 16 | 4 00 |
| February 6 | 2 00 |
| March 6 | 2 00 |
| May 29 | 2 00 |
| October 16 | 2 00 |

Rents from Newport:
$25 per month on the 1st of each month, beginning with April 1, 1892; and ending, and including, June 1, 1894.

### Disbursements.

| | |
|---|---|
| 1890–September 26. City taxes of 1890 | $ 114 87 |
| October 25. State taxes of 1880 | 39 20 |
| 1891–May 24. Taxes of 1889, as per tax sale (i. e., deducting amount bid in excess of taxes) | 52 66 |
| June 2. City back taxes | 1,017 20 |
| June 8. Carpenter | 19 30 |
| September 17. City taxes of 1891 | 114 30 |
| November 30. State taxes of 1891 | 39 20 |
| December 28. Fixing sidewalk | 114 75 |
| 1892–May 20. Carpenter | 25 00 |
| September 1. City taxes | 113 12 |
| October 8. Notice to tenant | 1 00 |
| November 30. Carpenter | 48 50 |
| 1893–May 27. Plastering and cementing | 10 75 |
| September 13. Cistern repairs | 15 00 |
| 1894–March 13. State taxes | 31 43 |
| April 27. City taxes | 91 40 |
| 1895–April 23. City taxes | 134 73 |

On all of the above items of receipts and disbursements, interest must run at 5 per cent. from the date thereof to the date of final judgment. Defendant must reimburse to plaintiff one-eighth of the excess of these disbursements over the receipts.

We have rejected the two items, "July 23, 1891, F. J. Dreyfous, $20," and "June 21, 1893, Guinault bill, $12.50," because nothing shows what they are for. It is not possible to allow them, in the absence of affirmative evidence that they were for necessary expenses.

We do not agree with defendant that plaintiff held the property as successor to the usufructuary rights of the grandmother, and that the settlement must be made upon that hypothesis. That question was put at rest on the other appeal. The original judgment on that appeal was to the effect that the tax sale was real and bona fide, and from that judgment only a restricted rehearing was granted, not as to the reality or bona fides of the tax sale, but, in the language of the court, "restricted to the question of the validity or invalidity of the tax sale; * * * the inquiry being restricted to the irregularities alleged in the tax proceedings leading to the sale." Thus the reality and bona fides of the tax sale was finally and irrevocably adjudged, and, necessarily, the

adjudication carried with it the consequence that the title by which Fabacher, and his vendee, plaintiff, held the property was the tax title, and not any title derived by private contract with the grandmother. In other words, plaintiff held, or claimed to hold, the ownership, and not the usufruct. Fabacher never intended to be usufructuary, nor did his vendee, plaintiff. They never consented to assume the obligations of a usufructuary. They claimed to hold the property by virtue of the tax title. By the ratification, this tax title was not abandoned, but, on the contrary, was confirmed.

Plaintiff owes defendant one-eighth of the $4,795.34, with 5 per cent. per annum interest thereon from the 1st of January, 1897, less one-eighth of the excess of the expenditures over the revenues and interest at same rate on said excess. He owes defendant, in addition, one-half of the costs decreed to be paid on the former appeal, viz., $44.65, with 5 per cent. interest thereon from February 3, 1902.

For the purpose of amendment, the judgment appealed from is set aside, and for the purpose of computing interest on the items as found in the present judgment, and entering final judgment accordingly, the case is remanded.. Plaintiff to pay the costs of this appeal, and the parties to divide those incurred in the lower court after the case was remanded

LAND, J., takes no part, not having heard the argument.

### On Application for Rehearing.

PER CURIAM. 1. The note referred to by plaintiff as fixing the date when plaintiff received the amount of the deposit from the depositaries was not offered in evidence, and hence could not be considered by this court.

2. On the former appeal the court held that plaintiff was holding the property as owner, and not as usufructuary. Plaintiff cannot now pretend to have been usufructuary. As owner of the property, plaintiff controlled the rents. If he let his grandmother have them, he is not the less accountable for them in his reckoning with defendant.

3. The item, "April 14, 1890, Holcher, carpenter, $32.25," was an expenditure incurred before the adjudication to Fabacher at tax sale, and while the property was being held by the grandmother as usufructuary. The usufructuary has no claim against the naked owner for ordinary repairs on the property.

4. The court erred in not allowing the following items. They were necessary disbursements in the management of the property, and therefore should come out of its revenues. For correcting this error the court deems it unnecessary to grant a rehearing. The following items, therefore, will have to be added to the amount allowed to plaintiff for disbursements, and stand on the same footing in all respects as the other items of disbursement heretofore allowed:

| | | |
|---|---|---|
| October 14, 1890. | Waterworks | $25 00 |
| January 15, 1891. | Insurance on house | 66 00 |
| October 1, 1891. | Waterworks | 25 00 |
| November 1, 1892. | Waterworks | 25 00 |
| February 18, 1893. | Excavating Co | 7 50 |

As thus amended, the judgment heretofore handed down is reaffirmed, and the applications of plaintiff and defendant for a rehearing are refused.